UNITED STATES DISTRICT COURT"
SOUTHERN DISTRICT OF NEW YORK

---

DOMINICK R. PILLA, ARCHITECTURE-
ENGINEERING P.C., *doing business as each
of Dominic R. Pilla Associates, PC, DRPILLA
Associates, PC, DRPILLA Consulting
Engineers, and/or Dominick R. Pilla*,

                Plaintiff,

       v.

ORLY GILAT *and* W 108 DEVELOPMENT
LLC,

               Defendants.

No. 19-CV-2255 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Benjamin M. Rattner, Esq.
Michael R. Wood, Esq.
Ceremele & Wood LLP
White Plains, NY
*Counsel for Plaintiff*

Kevin P. Mulry, Esq.
Hamutal Lieberman, Esq.
Farrell Fritz, P.C.
Uniondale, NY and New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

      Plaintiff Dominick R. Pilla, Architecture-Engineering P.C. ("Plaintiff") brings this Action

against Orly Gilat ("Gilat") and W 108 Development LLC ("W 108"; with Gilat, "Defendants"),

alleging copyright infringement under 17 U.S.C. § 101, *et seq.* (the "Copyright Act"), false

designation of origin under 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), and violations of 17

U.S.C. § 1202 (the "Digital Millennium Copyright Act," or "DMCA"). (*See* Compl. (Dkt. No.

7).)  Before the Court is Defendants' Motion To Dismiss (the "Motion"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Not. of Mot. (Dkt. No. 22).)  For the reasons explained herein, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint, documents appended to the Complaint, and other matters of which the Court may take judicial notice, and are taken as true for purposes of the instant Motion.[1]

Plaintiff is a New York-based corporation that provides "professional architectural services to various construction projects."  (Compl. ¶¶ 4, 12.)  W 108 is a New York-based limited liability company of which Gilat is an agent and principal, and is the owner of a "luxury construction project" at 324–326 West 108th Street in New York City (the "Project").  (Id. ¶¶ 1, 6–8.)  The Project involves the renovations of two existing five-story buildings and a sixth-story addition to the buildings.  (Id. ¶ 13.)

Plaintiff previously provided architectural services to Defendants in connection with the Project.  (Id. ¶ 12.)  In this role, Plaintiff created two sets of architectural drawings, titled the "W 108 Development 324–326 West 108th Street Plan Set" and the "W 108 Development 324–326 West 108th Street Plan Set 2" (collectively, "Plaintiff's Designs"), which it submitted to the United States Copyright Office (the "Copyright Office") in around 2016 to apply to register for a

---

[1] The Parties rely on additional facts in their Memoranda of Law that are not included in the Complaint, documents attached to the Complaint, or any of the documents deemed incorporated by reference or integral to the Complaint.  Nor are these additional facts matters of which the Court can take judicial notice.  Therefore, the Court will not consider these facts here, as they constitute matters outside of the pleadings.  *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) ("[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on 12(b)(6) motion to dismiss." (citations omitted)).

copyright. (*Id.* ¶¶ 1–2, 14.) Plaintiff created the Designs and submitted its copyright application at Defendants' "insistence and request." (*Id.* ¶ 14.) On September 12 and 16, 2016, the Copyright Office issued two Certificates of Copyright Registration (the "Certificates") for Plaintiff's Designs. (*Id.* ¶ 15; *id.* Ex. A ("Certificates") (Dkt. No. 1-1).) The Certificates state that Plaintiff is the author, "Copyright Claimant," and organization with "[r]ights and [p]ermissions" with respect to the Designs. (*Id.* at 2–4.)[2] The Certificates set forth that "new architectural work and revised architectural work" are included in the copyright claims, but "preexisting building design" is not. (*Id.* at 4.) According to Plaintiff, Defendants "were aware at all times" that the copyright for Plaintiff's Designs belonged to Plaintiff. (Compl. ¶ 17.)

Plaintiff began to implement its plans for the Project, but in approximately 2017, Defendants copied Plaintiff's Designs without receiving prior approval from Plaintiff. (*Id.* ¶ 20.) In approximately December 2017, Defendants submitted "illegal copies" of Plaintiff's Designs to the New York City Department of Buildings (the "DOB"). (*Id.* ¶¶ 20, 30.) In particular, Defendants submitted to the DOB a "cover sheet drawing list and accompanying [blue]prints" that were copied from the Designs. (*Id.* ¶ 30.) According to Plaintiff, Defendants represented to the DOB that the submitted drawings were their own, and Gilat "intentionally removed [Plaintiff's] name and [the] notice of copyright" from the original designs. (*Id.* ¶¶ 20, 45.) After making this submission, Defendants continued to work on the Project using designs or drawings "that were illegally copied [from Plaintiff's] . . . Designs," (*id.* ¶ 21), and may have "used, distributed, marketed, or displayed" Plaintiff's Designs for other construction projects, (*id.* ¶ 32).

---

[2] Because the page numbers for the Certificates are not consecutive, the Court instead cites the ECF page numbers at the top of the page to avoid confusion.

B.  Procedural Background

On March 12, 2019, Plaintiff filed the Complaint, (Dkt. No. 1), which was subsequently re-filed the following day due to filing issues, (Dkt. No. 7).  After receiving two extensions from the Court to respond to the Complaint, (Dkt. Nos. 13, 15), Defendants sought to file a motion to dismiss, (Dkt. No. 17).  After receiving leave from the Court at a Pre-Motion Conference, (*see* Dkt. (minute entry for July 31, 2019); Dkt. No. 21), Defendants submitted the instant Motion on August 22, 2019, (Not. of Mot.; Decl. of Kevin P. Mulry, Esq. in Supp. of Mot. ("Mulry Decl.") (Dkt. No. 23); Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 24).)  Thereafter, the Parties requested an extension of the briefing schedule, (Dkt. No. 26), and Plaintiff filed its response in opposition to the Motion on September 24, 2019, (Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 27)).  On October 8, 2019, Defendants submitted their Reply. (Defs.' Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply") (Dkt. No. 28); Reply Decl. of Kevin P. Mulry, Esq. in Supp. of Mot. ("Mulry Reply Decl.") (Dkt. No. 29).)

II.  Discussion

Defendants argue that the Complaint should be dismissed because Plaintiff fails to state claims for (1) copyright infringement, due to the fact that Plaintiff's Designs and the renderings submitted to the DOB by Defendants are not substantially similar, (Defs.' Mem. 4–17); (2) false designation of origin because § 43(a) of the Lanham Act does not cover architectural drawings, (*id.* at 17–20); and (3) violations of the DMCA because Plaintiff insufficiently alleges that Defendants removed Plaintiff's copyright management information ("CMI") from the drawings, (*id.* at 20–21).  Defendants also seek costs and reasonable attorney's fees.  (*Id.* at 21–22.)

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### B. Materials Considered

As a threshold matter, the Court considers whether exhibits submitted by Defendants in support of their Motion may be considered in this Opinion. Defendants filed several exhibits along with the instant Motion and with their Reply, and also included several visual aids in their Memorandum. (*See* Defs.' Mem.; Mulry Decl.; Mulry Reply Decl.) Exhibit A to the Declaration of Kevin P. Mulry, Esq. in Support of the Motion (the "Mulry Declaration") is a copy of Plaintiff's Complaint, which is, of course, properly considered in connection with Defendants' Motion. (*See* Mulry Decl. Ex. A (Dkt. No. 23-1).) Exhibit B to the Mulry Declaration includes "true and correct copi[es] of Defendants' architectural drawings" that were filed with the DOB on January 9, 2017 ("Defendants' Designs"; with Plaintiff's Designs, the "Designs"). (Mulry Decl. ¶ 3; *see id.* Ex. B ("Defs.' Designs") (Dkt. No. 23-2–8).) Exhibit C to the Mulry Declaration is a docket from the New York County Supreme Court case *W 108 Development LLC v. Dominick R. Pilla, Architecture-Engineering, P.C., et al.*, No. 654801/2016

(Sup. Ct. N.Y. County). (Mulry Decl. Ex. C ("State Docket") (Dkt. No. 23-9).)[3] Exhibit D to the Mulry Declaration includes "annotated comparison[s]" of Plaintiff's Designs and Defendants' Designs. (Mulry Decl. ¶ 5; *see id.* Ex. D ("Annotated Designs") (Dkt. No. 23-10).) Defendants' Memorandum also incorporates annotated comparisons of Plaintiff's and Defendants' Designs. (*See* Defs.' Mem. 7–16.) Exhibit A to the Reply Declaration of Kevin P. Mulry, Esq. in Support of the Motion (the "Mulry Reply Declaration") is an additional annotated comparison of one of Plaintiff's and Defendants' Designs. (*See* Mulry Reply Decl. Ex. A ("Sixth Floor Annotated Designs") (Dkt. No. 29-1).) Exhibit B to the Mulry Reply Declaration is a printout of a page from the November 5, 1898 Real Estate Record and Guide, obtained from the digital library of Columbia University. (*See* Mulry Reply Decl. Ex. B ("Real Estate Record") (Dkt. No. 29-2).) Exhibit C to the Mulry Reply Declaration is a printout from the DOB's website regarding the profile of the property at issue. (*See* Mulry Reply Decl. Ex. C ("Property Profile") (Dkt. No. 29-3).) Plaintiff also includes comparisons of several architectural drawings in its Memorandum opposing Defendants' Motion. (*See* Pl.'s Mem. 8–11.)

Plaintiff argues that the Court may not consider Defendants' exhibits, and particularly Defendants' Designs, because they were not attached to the Complaint, and their "terms and effects" were not incorporated by reference into the Complaint. (*See id.* at 14–15.) Plaintiff also argues that its claims are "adequately alleged" without needing to refer to Defendants' Designs,

---

[3] According to Plaintiff, W 108 has sued Plaintiff for breach of contract, professional malpractice, unjust enrichment, promissory estoppel, and negligent misrepresentation. (Pl.'s Mem. 3 n.1.) Also according to Plaintiff, another related litigation is pending in New York State Court, County of New York, under Index No. 159613/2016. (*Id.*) The litigation relates to Defendants' alleged failure to pay money due to Plaintiff under the terms of the Parties' contract. (*Id.*)

and that Defendants must either argue that the Complaint fails to state a claim or seek to move for summary judgment, in which case discovery will be necessary. (*See id.* at 15.)

"To be incorporated by reference, the [c]omplaint must make a clear, definite[,] and substantial reference to the documents." *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted). Additionally, even if not attached or incorporated by reference, a document on which the complaint "solely relies and which is integral to the complaint," *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citation, emphasis, and quotation marks omitted), or a document on which "the complaint relies heavily upon its terms and effect," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quotation marks omitted), may also be considered by the Court on a motion to dismiss. Documents are "integral" where the plaintiff had to rely on their content "in order to explain what the actual unlawful course of conduct was on which the [d]efendants embarked." *Thomas*, 232 F. Supp. 2d at 276; *see also Gantt v. Ferrara*, No. 15-CV-7661, 2017 WL 1192889, at *14 (S.D.N.Y. Mar. 29, 2017) (finding documents were integral to the complaint where the plaintiff "relied heavily upon [them] in framing the [c]omplaint" (alterations in original) (citation omitted)); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (same). Additionally, "no serious question as to [the documents'] authenticity can exist," *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991), and it must be "clear on the record that no dispute exists regarding the authenticity or accuracy of the document," *DiFolco*, 622 F.3d at 111 (citation and quotation marks omitted).

Here, Plaintiff expressly refers to Defendants' Designs throughout the Complaint and, while the Complaint does not discuss Defendants' Designs in great detail, a dispute over the similarity between Plaintiff's and Defendants' Designs is at the heart of Plaintiff's allegations.

For example, Plaintiff alleges that Defendants "copied [Plaintiff's] . . . Designs without [Plaintiff's] authorization or approval, and submitted certain derivative designs . . . to the . . . [DOB]," that Defendants "induced, prepared, directed, caused[,] or materially contributed to the preparation of certain architectural drawings by copying . . . [Plaintiff's] Designs without the prior written authorization or approval of [Plaintiff]," and that "illegal copies of . . . [Plaintiff's] Designs were subsequently submitted to the [DOB]." (Compl. ¶¶ 20, 29–30.) Although Plaintiff objects to the Court's consideration of Defendants' Designs, Plaintiff does not dispute the authenticity or accuracy of the Designs submitted by Defendants. In fact, Plaintiff uses some of Defendants' Designs in its own Memorandum. (*See* Pl.'s Mem. 8–11.)

District courts in the Second Circuit frequently consider allegedly copied material to be incorporated by reference in, or integral to, complaints in copyright actions. *See e.g.*, *L.A. T-Shirt & Print, Inc. v. Rue 21, Inc.*, Nos. 16-CV-5400, 16-CV-5702, 2017 WL 3575699, at *3 (S.D.N.Y. Aug. 17, 2017) (considering the plaintiff's work and the allegedly copyrighted work to be integral to the complaint because "although [the p]laintiffs did not attach images of their copyrighted works or [the d]efendants' allegedly infringing works to their complaints, [the p]laintiffs rely heavily upon the appearance of these works—indeed, [the p]laintiffs' infringement claims turn on the similarities between the appearances of their works and [the] [d]efendants'"); *Canal+ Image UK Ltd. v. Lutvack*, 773 F. Supp. 2d 419, 427 (S.D.N.Y. Mar. 29, 2011) (finding that, although the plaintiff had not attached or incorporated by reference a relevant film, musical, and book into its complaint, "[w]here [the plaintiff] repeatedly characterizes or invokes the [n]ovel, the [f]ilm, and the [m]usical in its complaint . . . and has alleged a claim for copyright infringement which requires proof that the [m]usical is substantially similar to the [f]ilm, it is plain that the [n]ovel, the [f]ilm, and the [m]usical are

integral to the complaint"); *Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 629 n.1 (S.D.N.Y. 2008) (deeming incorporated by reference and integral to the complaint a DVD copy of a film submitted by the defendant that contained allegedly copied material); *Hogan v. DC Comics*, 983 F. Supp. 82, 84 (N.D.N.Y. 1997) (granting the defendants' request for reconsideration of a prior decision declining to consider allegedly copyrighted and copied material submitted with the defendants' motion to dismiss).[4]  Thus, because Plaintiff's claims rest upon the similarities between Plaintiff's and Defendants' Designs, the Court will consider Exhibit B to the Mulry Declaration and the drawings included in Plaintiff's Memorandum, (*see* Pl.'s Mem. 8–11).[5]

The Court is also entitled to take notice of matters of public records.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (noting that "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes" (citation omitted)); *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321

---

[4] Defendants repeatedly cite *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010), for the proposition that Defendants' Designs should be incorporated by reference into the Complaint.  (*See* Defs.' Mem. 6; Defs.' Reply 8.)  However, in *Peter F. Gaito Architecture*, the Second Circuit noted that when "the works in question are *attached to a plaintiff's complaint*, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss."  602 F.3d at 64 (emphasis added).  As the Court has noted, however, it is proper to consider allegedly copied material incorporated by reference into a complaint or integral to a complaint in a suit for copyright infringement.  Indeed, in *Peter F. Gaito Architecture*, the Second Circuit cited to, among other cases, *Gottlieb*, 590 F. Supp. 2d at 629, noting that there, the court determined that the works in question were incorporated into the complaint.  *See Peter F. Gaito Architecture*, 602 F.3d at 64–65.

[5] Both Parties agree that the drawing labeled "Knockoff Drawing[]" in Plaintiff's Memorandum is not an image of one of Defendants' designs, as Plaintiff represented in its Memorandum, but is instead an image of one of Plaintiff's designs.  (*See* Pl.'s Mem. 10; Defs.' Reply 2–3; Letter from Benjamin M. Rattner, Esq. to Court (Oct. 11, 2019) ("Oct. 11 Rattner Letter") 1 (Dkt. No. 32).)

(S.D.N.Y. 2015) ("In considering a motion to dismiss, a court is permitted to take judicial notice of public records . . . ." (citation omitted)); *see also Hason v. Office of Prof'l Med. Conduct*, 314 F. Supp. 2d 241, 246 (S.D.N.Y. 2004) (holding that the court may consider state administrative decisions in ruling on a Rule 12(b)(6) motion). The state court docket attached as Exhibit C to the Mulry Declaration is a matter of public record, as are the documents attached as Exhibits B and C to the Mulry Reply Declaration, and the Court may consider these materials here. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Pursuant to [Federal] Rule [of Evidence] 201, courts have considered newspaper articles, . . . [and] documents filed with governmental entities and available on their official websites . . . .").[6]

However, the Court declines to consider the annotated versions of Defendants' Designs submitted as Exhibit D to the Mulry Declaration and included throughout Defendants' Memorandum and Reply. (*See* Defs.' Mem. 7–16; Defs.' Reply 3.) Plaintiff's Complaint does not reference the annotated drawings, and these versions of Defendants' Designs are not integral to the Complaint. Indeed, Defendants have not suggested that Plaintiff relied on the annotated designs in drafting the Complaint, or even that Plaintiff possessed or was aware of these versions of Defendants' Designs. While such exhibits may be appropriate to submit with a motion for summary judgment, the Court may not—and does not—consider them here.

Finally, Plaintiff appended several exhibits to its Complaint. Exhibit A includes the Certificates for Plaintiff's Designs. (*See* Certificates.) Exhibit B includes "[c]opies of certain [of

---

[6] The Court has confirmed that Exhibit B to the Mulry Reply Declaration, an excerpt from a November 5, 1898 copy of the Real Estate Record and Building Guide, is publicly available on the Internet through the Columbia University Libraries' Digital Collections.

Plaintiff's] [r]enovation and [a]ddition plans" for the Project. (Compl. ¶ 18; *id.* Ex. B ("Pl.'s

Designs") (Dkt. No. 1-2).) Exhibit C includes "copies of certain drawings submitted to the

Copyright Office." (Compl. ¶ 27; *id.* Ex. C ("Pl.'s Submitted Designs") (Dkt. No. 1-3).) The

Court also considers these attachments in considering the instant Motion. *See Leonard F. v. Isr.*

*Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." (citation and quotation marks omitted)).

    C.  Copyright Infringement Claim

    "The owner of a copyright has the exclusive right to—or to license others to—reproduce,

perform publicly, display publicly, prepare derivative works of, and distribute copies of, his

copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (citing 17

U.S.C. § 106). "A party who violates the exclusive rights of the copyright owner is an infringer,

liable for damages pursuant to 17 U.S.C. § 504." *Warren v. John Wiley & Sons, Inc.*, 952 F.

Supp. 2d 610, 616 (S.D.N.Y. 2013).

    "In order to make out a claim of copyright infringement for an architectural work—or

any work—a plaintiff must establish three things: [(]1) that his work is protected by a valid

copyright, [(]2) that the defendant copied his work, and [(]3) that the copying was wrongful."

*Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014) (citations omitted). When

"a substantial similarity exists between the defendant's work and the protect[a]ble elements of

plaintiff's," copying is wrongful. *Peter F. Gaito Architecture*, 602 F.3d at 63 (citation and

quotation marks omitted). Here, it is undisputed that Plaintiff possessed valid copyrights. (*See*

Certificates.) Further, Defendants' Memorandum and Reply focus solely on whether a

substantial similarity exists between the Designs and, for the purposes of this Motion, do not appear to contest the second prong of the test. (*See* Defs.' Mem. 4–17; Defs.' Reply 2–9.) Accordingly, the Court focuses exclusively on whether, as a matter of law, a substantial similarity exists between protectable elements of Plaintiff's and Defendants' Designs.

"[I]t is entirely appropriate for [a] district court to consider the similarity between th[e] works in connection with a motion to dismiss." *Peter F. Gaito Architecture*, 602 F.3d at 64. When a court is called upon to consider whether two works are substantially similar, "no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works," and "the works themselves supersede and control contrary descriptions of them, including any contrary allegations, conclusions[,] or descriptions contained in the pleadings." *Id.* (citations and quotation marks omitted). However, "the question of substantial similarity typically presents an extremely close question of fact." *Id.* at 63 (citing *Arnstein v. Porter*, 154 F.2d 464, 468–69 (2d Cir. 1946)). Thus, "the question . . . is generally a factual inquiry reserved to the trier of fact," *Blakeman v. The Walt Disney Co.*, 613 F. Supp. 2d 288, 305 n.4 (E.D.N.Y. 2009) (citations omitted), because "[t]he test for infringement of copyright is of necessity vague," *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960), and "[t]he determination of the extent of similarity that will constitute a *substantial*, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations," *Peter F. Gaito Architecture*, 602 F.3d at 63 (alterations in original) (citing 4–13 Nimmer on Copyright § 13.03 (2009)); *see also Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980) ("[T]he question of infringement is generally resolved by the fact-finder's prediction of the probable reaction of a hypothetical 'ordinary observer.'").

"The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (citation, footnote, alteration, and quotation marks omitted). In applying this test, the Court asks "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Peter F. Gaito Architecture*, 602 F.3d at 66 (citation and quotation marks omitted). Under circumstances where the works at issue contain both protectable and unprotectable elements, the Court's analysis must be "more discerning," *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994) (citation and quotation marks omitted), *abrogated on other grounds by Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir, 2010), and the Court "must attempt to extract the unprotect[a]ble elements from . . . consideration and ask whether the protect[a]ble elements, standing alone, are substantially similar," *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995) (emphasis omitted) (citations omitted). Generally, protectable elements are those that were independently created by the author and possess at least some minimal degree of creativity. *See Belair v. MGA Entm't*, 831 F. Supp. 2d 687, 693 (S.D.N.Y. 2011), *aff'd*, 503 F. App'x 65 (2d Cir. 2012). "[T]he requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble, or obvious it might be." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (citation and quotation marks omitted).

However, the Second Circuit has clarified that the Court is not "required to dissect the works into their separate components, and compare only those elements which are in themselves copyrightable." *Peter F. Gaito Architecture*, 602 F.3d at 66 (citations, alteration, and quotation

marks omitted).  Instead, the Court's inquiry is "guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work, as instructed by [its] good eyes and common sense."  *Id.* (citations and quotation marks omitted).  This is the appropriate frame of reference because a "defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art . . . are considered in relation to one another."  *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003).  In short, the Court's "inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work."  *Peter F. Gaito Architecture*, 602 F.3d at 66 (citation and quotation marks omitted).

With respect to architectural works, the Second Circuit has noted that "[t]he problem of distinguishing an idea from its expression is particularly acute when the work of 'authorship' is of a functional nature, as is a plan for the accomplishment of an architectural or engineering project."  *Attia v. Soc'y of N.Y. Hosp.*, 201 F.3d 50, 55 (2d Cir. 1999).  The Second Circuit's decision in *Zalewski*, 754 F.3d 95, is particularly instructive with respect to elements of architectural works that are unprotectable, which include: (1) "market expectations," *id.* at 105; (2) "[a]ny design elements attributable to building codes, topography, structures that already exist on the construction site, or engineering necessity," *id.*; (3) "generalized notions of where to place functional elements, how to route the flow of traffic, and . . . methods of construction," *id.* at 106 (omission in original) (quoting *Attia*, 201 F.3d at 55); (4) design parameters, defined as "[c]onstraints placed on an architect by the way her client plans to use the building," *id.*; and (5) "elements taken from [recognized] styles," such as "[n]eoclassical government buildings,

15

colonial houses, and modern high-rise office buildings," *id.* at 105. In addition, "[s]tandard configurations of spaces" and "individual standard features, such as windows, doors, and other staple building components" are unprotectable. 37 C.F.R. § 202.11(d)(2).

Defendants argue that the two sets of Designs are not substantially similar for a number of reasons, such as the layout and number of residential units, (Defs.' Mem. 7–9), the treatment of the backyard, (*id.* at 10–11), and the location of the common and utility areas, (*id.* at 12). Although there are certainly differences between the two sets of designs—and Plaintiff appears to concede as much with respect to these specific elements, (*see* Pl.'s Mem. 11)—at this early stage, the Court cannot conclude as a matter of law that the works as a whole are not substantially similar. With respect to some of Plaintiff's Designs, an "average lay observer *[c]ould* recognize the alleged copy as having been appropriated from the copyrighted work." *Peter F. Gaito Architecture*, 602 F.3d at 66 (emphasis added) (citation and quotation marks omitted).

Although Defendants raise numerous potential differences between the Designs, the Court considers here the similarities described by Plaintiff in its Memorandum, assuming that these alleged similarities form the basis of Plaintiff's claim. (Pl.'s Mem. 8–11.) First, with respect to the façade of the buildings, an ordinary observer could determine that the two Designs embody the same "total concept and overall feel," *Peter F. Gaito Architecture*, 602 F.3d at 66 (citation and quotation marks omitted), as they are close to identical, (Pl.'s Mem. at 8). However, Defendants argue that the Designs for the front façade are unprotectable because the existing building upon which the Designs were based is a landmark site that cannot be torn down; thus, the two sets of drawings were based upon the same, preexisting structure. (Defs.' Reply 4–5; Real Estate Record.) While this may be true, the plans for *expansion* of the existing

buildings are not necessarily unprotectable, and both Designs appear to be highly similar in this

regard. For example, both of the designs include a sixth additional story of windows, and both

utilize the same sort of masonry for this floor. (*See* Pl.'s Mem. 8.) Above the new floor is a roof

that is fenced off in a similar manner in both Designs, with "bulkhead additions" that are of

closely similar shapes. (*Id.*) Further, to the right of the sixth story, both Designs incorporate a

rectangular-shaped area with a ladder, utilizing a similar scale. (*Id.*) Defendants argue that these

similarities are attributable to the codes of the Landmark Preservation Commission ("LPC"), and

thus are unprotectable. (Defs.' Reply 5.) While this argument may ultimately succeed, it must

be reserved for summary judgment, as here, Defendants are unable to develop a factual record on

what constraints existed because of the LPC codes and what features of the expansion plans

those codes dictated.[7] *See Zalewski*, 754 F.3d at 106 n.20 (on summary judgment, taking judicial

---

[7] Defendants cite to Title 25, Chapter 3 of the New York City Administrative Code (the "Code"), which governs the LPC. (Def.'s Reply 5.) The Code instructs that for "request[s] for certificate[s] of no effect," "[i]n any case where an applicant for a permit from the [DOB] to construct, reconstruct, alter[,] or demolish any improvement on a landmark site . . . files a copy of such application . . . with the [LPC], together with a request for a certificate of no effect on protected architectural features, the [LPC] shall determine . . . whether the proposed work would change, destroy[,] or affect any exterior architectural feature of the improvement on a landmark site . . .; and [] in the case of construction of a new improvement, whether such construction would affect or not be in harmony with the external appearance of other, neighboring improvements on such site or in such district. If the [LPC] determines such question in the negative, it shall grant such certificate; otherwise, it shall deny such request." N.Y.C. Admin. Code § 25-306(a)(1). The Code uses similar language with respect to factors governing the issuance of "certificate[s] of appropriateness," for which the LPC shall consider "the effect of the proposed work in creating, changing, destroying[,] or affecting the exterior architectural features of the improvement upon which such work is to be done, and . . . the relationship between the results of such work and the exterior architectural features of other, neighboring improvements in such district." *Id.* § 25-307(b)(1)(a). "Exterior architectural features" are defined by the Code as "[t]he architectural style, design, general arrangement[,] and components of all of the outer surfaces of an improvement . . . including, but not limited to, the kind, color[,] and texture of the building materials and the type and style of all windows, doors, lights, signs[,] and other fixtures appurtenant to such improvement." *Id.* § 25-302(g).

These Code sections, however, do not clarify exactly what portions of the Designs for this Project were dictated by LPC's regulations, and, at this stage of the litigation, the Court does

notice of treatises describing the basics of colonial architecture submitted by the defendants); *Ranieri v. Adirondack Dev. Grp.*, 164 F. Supp. 3d 305, 333 (N.D.N.Y. 2016) (citing deposition testimony that the defendant made "only minor modifications" to the plaintiff's design and that certain configurations of the design were uniquely the plaintiff's own); *Buttner v. RD Palmer Enters., Inc.*, No. 13-CV-342, 2015 WL 1472084, at *9–10 (N.D.N.Y. Mar. 31, 2015) (considering, at summary judgment, the plaintiff's deposition testimony on the originality of design and pre-existing structures already in the building).

Similarly, without the benefit of a developed record on the existing exterior of the back of the building and design constraints put in place by the building's historical status, the Court cannot rule at this juncture that the rear exterior designs are not substantially similar as a matter of law. Both Designs employ a similar plan for windows, terraces, and masonry, and an ordinary observer could also deem the roof designs, with large rectangular bulkhead structures, apparent chimneys on either side, and railings around the top floor, to be substantially similar. (*See* Pl.'s Mem. 9.) Although there are certainly some differences between the designs of the back exterior—for example, the layout of the bottom floor, the masonry on the fifth floor, and the number of windows on the sixth floor, (*see id.*), the Court cannot rule at this juncture that the designs are not substantially similar as a matter of law.

An "ordinary observer" could also conclude that Plaintiff's and Defendants' designs for the roof garden embody a similar "total concept and overall feel." *Peter F. Gaito Architecture*, 602 F.3d at 66 (citations and quotation marks omitted). In both Designs, the garden is on the right side of the building, and wraps around the elevator and stairwell in a C-shape. (*See* Pl.'s

---

not have, nor could it consider, relevant documents such as the permit application for the Project which was presumably submitted to DOB and/or the LPC.

Mem. at 10–11.)[8]  While Defendants point to certain differences between the two Designs—for example, the amount of machinery depicted in Plaintiff's Design and the number of plants included in Defendants' Design, (Defs.' Reply 6–7)—not all of the Designs that have been submitted to the Court are identical.  For example, at least one of Defendants' Designs contains far less detail for the roof garden itself, and while Plaintiff's Design includes more actual mechanical items, Defendants' Design denotes a "mech[anical] area" in the same spot indicated on Plaintiff's Designs, (see Pl.'s Mem. 11; Defs.' Designs 21 (Dkt. No. 23-7)).  Thus, the Court cannot conclude that no reasonable juror could not find substantial similarity in the designs.  Although Defendants argue that because of the shape of the roof and the placement of the elevator and stairs, there was "little room for creativity" with respect to the garden's shape, (Defs.' Reply 6), and that "market expectations" include a roof garden, (Defs.' Mem. 17), were the Court to conclude as much here without a fully developed record, it would make impermissible inferences against Plaintiff.  Thus, such determinations should be reserved for a summary judgment motion.  See Buttner, 2015 WL 1472084, at *9–10 (considering deposition testimony that certain components of a building were dictated by market forces).

Plaintiff further points to the rear exterior of the buildings, the design of the sixth floor, and the inclusion and location of certain amenities in the basement as indicative of wrongful copying.  (See Pl.'s Mem. 9–10, 12.)  While not concluding at this juncture that these elements are, as a matter of law, not substantially similar, the Court notes that such arguments may suffer

_____

[8] Defendants note that Plaintiff's Design for the roof garden "appears to be concentrated in the top right corner of the roof."  (Defs.' Reply 6.)  The Court is unable to conclude from the submitted plans that this is the case.  While the top right corner of Plaintiff's Design is labeled "roof garden," the drawing does not preclude that the garden may also wrap around the elevator and stairwell, as there appear to be only labels, and not lines denoting walls, along this space.  (See Pl.'s Mem. 11.)

at a later stage, as these Designs involve a greater number of disparities, such as the arrangements of the space.  For example, although both Designs include a bike room and an exercise room on the lower level, these amenities are in different locations.  (*See id.* at 11–12; Defs.' Mem. 12; Defs.' Reply 7.)  Defendants further argue that many elements of these Designs are unprotectable because they are "dictated by efficiency and general notions of where to place functional elements," (*id.*), and may also be governed by market expectations and design parameters, (Defs.' Mem. 17).   However, without a factual record demonstrating what those market expectations, design parameters, and functional considerations may be, the Court may not assume against Plaintiff, at this stage, that these factors are true.  Thus, Defendants' arguments with respect to these elements are more properly reserved for summary judgment.  *See Buttner*, 2015 WL 1472084, at *9–10 (considering deposition testimony that certain choices with respect to building design were driven by functionality concerns and design parameters set by one of the defendants); *North Forest Dev., LLC v. Walden Ave. Realty Assocs., LLC*, No. 06-CV-378, 2009 WL 5959961, at *5 (W.D.N.Y. July 22, 2009) (considering affidavit statements regarding "standard construction design" of "mechanicals and plumbing" (record citation and quotation marks omitted)), *adopted by* 2010 WL 741992 (W.D.N.Y. Feb. 26, 2010).  Additionally, even if the Court were to conclude as a matter of law that the interior of the buildings were not substantially similar, such a determination would not necessarily preclude a finding that Defendants' Design for the exterior of the building constituted an act copyright infringement. *See Axelrod & Cherveny, Architects, P.C. v. T. & S. Builders, Inc.*, 943 F. Supp. 2d 357, 362 (E.D.N.Y. 2013) ("[The] [d]efendants' [a]ct of [c]opying of the [e]xterior of the [homes] [wa]s [s]ufficient to [c]onstitute an [a]ct of [c]opyright [i]nfringement [e]ven if the [i]nteriors of the . . . [h]omes [w]ere not [s]ubstantially [s]imilar . . . .").

Defendants rely heavily on *Peter F. Gaito Architecture* to argue that the Court may determine the issue of substantial similarity at the Motion To Dismiss stage. (Defs.' Mem. 4–5.) However, although courts have determined substantial similarity at this stage of a litigation "[i]n discrete circumstances," courts do "generally prefer to wait until the summary judgment stage of the litigation." *MacKenzie Architects, PC v. VLG Real Estates Developers, LLC*, No. 15-CV-1105, 2016 WL 4703736, at *4 (N.D.N.Y. Sept. 8, 2016); *see also Zalewski*, 754 F.3d at 98, 106–07 (affirming the district court's grant of summary judgment and finding that no reasonable jury could find that the defendant's architectural designs were substantially similar to those of the plaintiff); *Attia*, 201 F.3d at 51, 58 (same). Further, the Second Circuit has recognized that "there can be certain instances of alleged copyright infringement where the question of substantial similarity cannot be addressed without the aid of discovery or expert testimony." *Peter F. Gaito Architecture*, 602 F.3d at 65. In *Peter F. Gaito Architecture*, which involved a district court's granting of a motion to dismiss on the basis of substantial similarity, the Second Circuit highlighted that there was an "utter lack of similarity between the two designs," and that "nothing in the various schematics or plans indicate[d] any similarities between the specific aesthetic choices embodied in the respective designs." *Id.* at 66, 67. For example, the plaintiff's design included three structures, including a 34-story residential tower and townhomes, while the defendant's design included one structure, a 42-story building, and no townhomes. *Id.* at 66–67. Conversely, in this Action, the plans submitted to the Court thus far do not demonstrate such an "utter lack of similarity," *id.* at 66.[9] Thus, the Court does not conclude at this stage that Plaintiff

---

[9] Relatedly, Defendants note that the Complaint "does not identify a *single element* in which [Defendants' Designs] are substantially similar to [Plaintiff's Designs]." (Defs.' Mem. 5 (emphasis in original).) It is well-established that a complaint for copyright infringement must allege "(1) which specific original works are the subject of the copyright claim, (2) that [the] plaintiff owns the copyright in those works, (3) that the copyrights have been registered in

is not entitled to offer evidence in support of its claims, and, although the Court does not determine whether the designs are "in fact substantially similar," the Court also cannot conclude "as a matter of law at this stage that the designs are *not* substantially similar." *Chirogianis v. Parangi*, No. 11-CV-953, 2011 WL 6179706, at *3 (S.D.N.Y. Dec. 12, 2011) (emphasis added) (citation omitted). Defendants' Motion with respect to Plaintiff's copyright infringement claim is therefore denied.

### D. False Designation of Origin Claim

To state a claim for trademark or service mark infringement under § 43(a) of the Lanham Act, a plaintiff must demonstrate that "(1) it has a valid trademark or [service mark] entitled to protection, and (2) the defendant's use of a similar [mark] is likely to cause confusion among consumers as to the origin of the goods or services." *Morgans Grp. LLC v. John Doe Co.*, No. 10-CV-5225, 2012 WL 1098276, at *4 (S.D.N.Y. Mar. 31, 2012) (footnote omitted) (citing *Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2005)); *see also Thoip v. Walt Disney Co.*, 736 F. Supp. 2d 689, 702–03 (S.D.N.Y. 2010) ("'A claim of trademark infringement . . . is analyzed under [a] familiar two-prong test . . . [which] looks first to whether the plaintiff's

---

accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright." *Palmer/Kane LLC v. Benchmark Educ. Co. LLC*, No. 18-CV-9369, 2020 WL 85469, at *2 (S.D.N.Y. Jan. 6, 2020) (citation and quotation marks omitted). "Although a plaintiff must describe the acts constituting copyright infringement with some specificity, copyright claims are not subject to particularity in pleading . . . . Thus copyright infringement must be pleaded in accordance with Rule 8, rather than the heightened pleading standard of Rule 9." *Blagman v. Apple Inc.*, No. 12-CV-5453, 2013 WL 2181709, at *3 (S.D.N.Y. May 20, 2013) (citations and quotation marks omitted), and that Defendants infringed on the copyright by "cop[ying] the . . . Designs without [Plaintiff's] authorization or approval, and submitt[ing] certain derivative designs, drawings[,] or architectural work . . . to the . . . [DOB]," (Compl. ¶ 20). Taken as true, these allegations state a claim for copyright infringement.

mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.'" (one alteration in original) (footnotes omitted) (quoting *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003))). Both registered and unregistered trademarks and service marks are entitled to protection, and § 43(a), under which Plaintiff proceeds, "creates a cause of action for infringement of unregistered []marks." *Silberstein v. Fox Entm't Grp., Inc.*, 424 F. Supp. 2d 616, 632 (S.D.N.Y. 2004) (footnote omitted), *aff'd*, 242 F. App'x 720 (2d Cir. 2007); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (noting that it "is common ground that § 43(a) protects qualifying unregistered trademarks"). "[W]here a plaintiff cannot establish that its mark is entitled to protection, a court need not consider whether a defendant's use of a similar mark is likely to cause confusion." *Morgans Grp.*, 2012 WL 1098276, at *4 (citation omitted).

Defendants argue that Plaintiff's claim of false designation of origin must be dismissed because architectural designs do not fall under the purview of the Lanham Act. (Defs.' Mem. 17–20.) Defendants first point to the Supreme Court's decision in *Dastar Corporation v. Twentieth Century Fox Film Corporation*, 539 U.S. 23 (2003), in which the respondent had alleged that the petitioner copied the respondent's film, made small changes to it, and then marketed the product as its own. *See* 539 U.S. at 26–27. In finding that § 43(a) of the Lanham Act did not apply to these claims, the Supreme Court held that the phrase "origin of goods" in the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do." *Id.* at 37 (citations omitted). Although the decision in *Dastar* related

specifically to video footage, the Supreme Court noted that copyright law, and not the Lanham Act, is intended to protect "communicative products" specifically, which are products "valued not primarily for . . . physical qualities, such as a hammer, but for the intellectual content that [they] convey[], such as a book or . . . a video." *Id.* at 33, 37–38.  The Supreme Court further noted that if the petitioner was a "producer of [] tangible goods . . . offered for sale," and the respondent had bought the petitioner's videotapes and "merely repackaged them as its own," the claim would have "undoubtedly be[en] sustained"; instead, however, the alleged wrongdoing involved copying a creative work, making small changes to it, and producing a separate series of goods.  *Id.* at 31, 37.

Thus, "[s]ince *Dastar*, Lanham Act claims arising from the alleged copying of creative work have been clearly foreclosed." *Hudson v. Universal Studios, Inc.*, No. 04-CV-6997, 2008 WL 4701488, at *8 (S.D.N.Y. Oct. 23, 2008) (citation and quotation marks omitted), *aff'd*, 369 F. App'x 291 (2d Cir. 2010).  This foreclosure "applies with equal force to architectural works," *Ranieri*, 164 F. Supp. 3d at 354–355 (collecting cases), because the "copying of creative content like [architectural drawings] is not protected by the origin of work provision of the Lanham Act . . . precisely because this sort of claim falls within the purview of copyright law," *Moser Pilon Nelson Architects, LLC v. HNTB Corp.*, No. 05-CV-422, 2006 WL 2331013, at *10 (D. Conn. Aug. 8, 2006) (citations and quotation marks omitted); *see also, e.g.*, *Akar, Inc. v. Foreign Exch., Inc.*, No. 09-CV-4940, 2009 WL 10673204, at *6 (C.D. Cal. Sept. 18, 2009) ("Under *Dastar*, it is clear that there is no claim under the Lanham Act for copying, revising, and using . . . architectural plans.  Such claim exists, if at all, under copyright law."); *Francois v. Jack Ruch Quality Homes, Inc.*, No. 03-CV-1419, 2006 WL 2361892, at *13 (C.D. Ill. Aug. 14, 2006)

("The *Dastar* definition and subsequent holding surely applies to the architectural plans at issue in the case . . . .").

Although Plaintiff argues that the Court should not dismiss this claim because there has been "no discovery into whether Defendants took [Plaintiff's Designs], removed [Plaintiff's] trademark from these goods, and attempted to present these drawings as their own to public bodies such as the DOB," (Pl.'s Mem. 19–20), Plaintiff does not allege any facts in its Complaint to support such a claim. Instead, Plaintiff's Complaint centers on Defendants' alleged copying, revision, and use of Plaintiff's Designs. (*See* Compl. ¶¶ 20 ("Defendants . . . copied . . . [Plaintiff's] Designs without [Plaintiff's] authorization or approval, and submitted certain *derivative* designs . . . to the . . . [DOB] (and others), as their own creation" (emphasis added)), 29 ("Defendants induced, prepared, directed, caused[,] or materially contributed to the preparation of certain architectural drawings by copying . . . [Plaintiff's] Designs . . . ."), 30 ("[I]llegal copies of . . . [Plaintiff's] Designs were subsequently submitted to the [DOB] by Defendants, using . . accompanying blueprints which were illegally copied [from Plaintiff's] . . . Designs."); *see also* Pl.'s Mem. 2–3 ("Defendants orchestrated a scheme . . . to copy [Plaintiff's] [d]rawings, make minor adjustments to them, remove [Plaintiff's] [CMI] . . . , and submit them to the DOB as their own creation.")). Plaintiff's allegations that Defendants copied from Plaintiff's Designs to create their own "derivative designs" fall squarely within the type of circumstances contemplated by *Dastar* as not actionable under § 43(a). Thus, Plaintiff's claim for false designation of origin must be dismissed.

Although Plaintiff also avers that, "[u]pon information and belief, Defendants may have used, distributed, marketed[,] and displayed the [W 108 Designs] for other construction projects, besides the Project," (Compl. ¶ 32), this allegation alone cannot sustain Plaintiff's Lanham Act

claim under § 43(a). In *Dastar*, the Supreme Court suggested that a claim that the respondent "merely repackaged [the videotapes of a producer of tangible goods offered for sale] as its own" could have survived. 539 U.S. at 31. Plaintiff's general allegation that Defendants may have used, distributed, marketed, and displayed its Designs for other Projects does not explicitly allege that such a "repackaging" occurred, that Defendants attempted to pass off the Designs as their own when they allegedly presented them, or that Plaintiff was a "producer of tangible goods offered for sale," *id.* at 37. Further, although Plaintiff notes in its Memorandum that "Gilat presented . . . [Plaintiff's Designs] to a new set of architects, claimed that she owned them by passing them off as her own creation, and . . . thus created confusion as to the source of goods," (Pl.'s Mem. 20), the Court will not consider facts that have not been alleged in the Complaint. *See McCray v. City of New York*, Nos. 03-CV-9685, 03-CV-9974, 03-CV-10080, 2007 WL 4352748, at *30 n.34 (S.D.N.Y. Dec. 11, 2007) (finding that the plaintiffs' attempt to add specific details to the factual allegations in their complaints through their memoranda of law constituted an "impermissibl[e] attempt to amend their [c]omplaints in opposition to [the] [d]efendants' [m]otions to [d]ismiss" (citation omitted)).

However, because this is the first adjudication of Plaintiff's claims, the Court dismisses Plaintiff's false designation of origin claim without prejudice. To the extent that Plaintiff can allege that its work is a "tangible good[] . . . offered for sale" and that Defendants not only copied, but also "repackaged" Plaintiff's work and, with no revisions or changes, marketed it as their own, the Court grants Plaintiff leave to file an amended complaint reasserting a claim for false designation of origin. *See LaPine v. Seinfeld*, No. 08-CV-128, 2009 WL 2902584, at *15 (S.D.N.Y. Sept. 10, 2009) ("Following *Dastar*, a plaintiff may be able to bring a [§] 43(a) violation based on [a] defendant's repackaging of [a] plaintiff's material as its own." (citation

omitted)); *see also Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465, 470 (S.D.N.Y. 2017) ("[The] defendants obtained tangible goods . . . that [the plaintiffs] created and sold (or copies of them), and falsely represented themselves as their source."). Such a claim would be "distinct from, and not foreclosed by, [a] copyright infringement claim." *Id.*; *see also Moser Pilon Nelson Architects*, 2006 WL 2331013, at *11 (noting that in *Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998), a case cited by the plaintiff in its memorandum, the defendant architect took original drawings, physically removed the plaintiff architect's name and seal, and replaced with his own name and seal).

E.  DMCA Claim

Under the DMCA, it is unlawful to knowingly, and with the intent to "induce, enable, facilitate, or conceal infringement," either "provide" or "distribute" (or "import for distribution") false CMI.  17 U.S.C. § 1202(a).  Thus, to state a claim for providing false CMI, "[the] [p]laintiffs must allege that the defendant both knew that the CMI was false, and provided or distributed the false CMI with the intent to induce, enable, facilitate, or conceal infringement." *Aaberg v. Francesca's Collections, Inc.*, No. 17-CV-115, 2018 WL 1583037, at *6 (S.D.N.Y. Mar. 27, 2018) (citation omitted).  CMI includes, inter alia, "the title or identifying information of the work, author or copyright owner, the terms and conditions of use of the work, and identifying numbers or symbols referring to such information." *BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (citing 17 U.S.C. § 1202(c)(1)–(3), (6)–(7)). Additionally, "[t]he DMCA prohibits . . . intentionally removing or altering any [CMI]." *Zalewski*, 754 F.3d at 107 (alterations and quotation marks omitted) (citing 17 U.S.C. § 1202(b)). To state a claim for removal of CMI, Plaintiff must allege "(1) the existence of CMI on the materials at issue; (2) removal and/or alteration of that information; and (3) that the removal

and/or alteration was done intentionally." *Fischer v. Forrest*, Nos. 14-CV-1304, 14-CV-1307, 2015 WL 195822, at *8 (S.D.N.Y. Jan. 13, 2015) (citation, alteration, and quotation marks omitted).

Defendants argue that Plaintiff's claim under the DMCA must be dismissed because Plaintiff's allegations are conclusory, fail to allege that Defendants submitted plans with CMI removed, do not detail when, how, or where the CMI was removed, and do not provide an example of an allegedly infringing design. (Defs.' Mem. 20–21.) Defendants also argue that because they have established that their Designs are not exact copies of Plaintiff's Designs with the CMI removed, Plaintiff cannot state a claim under the DMCA. (*Id.*)

The Court finds that at this early stage of the litigation, and drawing all inferences in favor of Plaintiff, Plaintiff has stated a claim for removal of CMI, albeit barely. First, Plaintiff alleges the existence of CMI on Plaintiff's Designs. (Compl. ¶¶ 16, 45.) The Designs attached to the Complaint include Plaintiff's logo, name, and seal, as well as a note stating, "[t]he entire contents of this document . . . and all copyrights therein[] are and shall remain the sole and exclusive property of [Plaintiff]. The documents and their contents may not be used, photocopied[,] or reproduced digitally, electronically[,] or in any other manner without the express written consent of [Plaintiff]." (Pl.'s Designs 2–5.) Such information appears to be sufficient to constitute CMI under the DMCA. *See Hirsch v. CBS Broad. Inc.*, No. 17-CV-1860, 2017 WL 3393845, at *8 (S.D.N.Y. Aug. 4, 2017) (alleging that the defendant removed CMI from a photograph that identified the plaintiff as the photographer); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 304–05 (S.D.N.Y. 2011) (concluding that attributions that included a photographer's name constituted CMI); *Associated Press v. All Headline News Corp.*, 608 F. Supp. 2d 454, 461 (S.D.N.Y. 2009) (noting that the plaintiff alleged in its complaint that the CMI

was the identification of itself as the owner and author of certain published articles that were allegedly copied).  Next, Plaintiff states that Defendants "intentionally removed" its CMI from the Designs.  (Compl. ¶ 45.)  Although Plaintiff does not allege how, when, or where this removal occurred, such details are not necessary at the pleading stage for a claim under the DMCA, and Defendants set forth no case law arguing that they are.  *See Aaberg*, 2018 WL 1583037, at *8 (finding that the plaintiff sufficiently alleged removal of CMI, even when the plaintiff was "silent on exactly how" the defendants removed the CMI and did not provide images of the allegedly infringing product).  Further, Plaintiff does plead that Defendants "copied . . . [Plaintiff's] Designs without [Plaintiff's] authorization or approval, and submitted certain derivative designs . . . to the [DOB]," and that Defendants "continued or allowed to continue implementation of the Project based upon designs . . . that were illegally copied [from] . . . [Plaintiff's] Designs."  (Compl. ¶¶ 20–21.)  Drawing all inferences in favor of Plaintiff, as the Court must do at this stage, Plaintiff plausibly alleges that the CMI was removed at the time of the unlawful copying.  *See Associated Press*, 608 F. Supp. 2d at 461–62 (finding that the plaintiff stated a claim for CMI removal when it alleged that the defendants "intentionally alter[ed] or remov[ed] [CMI] appearing in . . . reports" that defendants allegedly copied or adapted from the plaintiff's original work (record citation and quotation marks omitted)).

Although sparse, Plaintiff alleges sufficient facts to suggest that Defendants acted intentionally.  For example, Defendants allegedly "were aware at all times" of Plaintiff's copyrights, had access to Plaintiff's designs, copied the designs and submitted derivative designs, and "may have used, distributed, marketed, and displayed . . . [Plaintiff's] Designs for other construction projects."  (Compl. ¶¶ 17, 20, 31–32.)  Taken together, these allegations are

sufficient to give rise to a plausible inference that Defendants were aware of the appropriate uses of Plaintiffs' CMI and, in allegedly copying the designs, intentionally altered or removed Plaintiff's CMI. *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009) (reversing the district court's grant of a motion to dismiss because "scienter issues . . . are appropriate for resolution by the trier of fact," and courts must be "lenient in allowing scienter issues . . . to survive motions to dismiss" (citation and quotation marks omitted)). Further, although Plaintiff does not provide a copy of the allegedly infringing work, this, too, is not required for Plaintiff to state a claim under the DMCA. *See Patterson v. Diggs*, No. 18-CV-3142, 2019 WL 3996493, at *4 (S.D.N.Y. Aug. 23, 2019) (finding that the plaintiff supported his allegations of a DMCA violation by attaching an exhibit to the complaint that purportedly showed the original CMI that the plaintiff alleged was later altered or removed); *Aaberg*, 2018 WL 1583037, at *8 (finding that the plaintiff plausibly alleged a DMCA violation, even when no images of the allegedly infringing product was submitted). Finally, although Defendants argue that they have "established" that their Designs are not exact copies of Plaintiff's, thus precluding a claim under the DMCA that CMI was altered or removed, this argument is better reserved for summary judgment, when there is a fully developed record. *See id.* ("The [c]ourt's conclusion at this stage in the litigation carries no prejudice for [the] [d]efendants to make a similar legal argument following discovery . . . ."); *Hirsch*, 2017 WL 3393845, at *8 ("The facts adduced in discovery, of course, may place [the defendant's alleged] elimination of [the plaintiff's] photo credit in a more benign light[.]"). The Court therefore denies Defendants' Motion with respect to Plaintiff's claims under the DMCA.

Although Defendants' arguments, and Plaintiff's responses, focus solely on whether Plaintiff sufficiently alleges a claim of removal of CMI under 17 U.S.C. § 1202(b), Plaintiff also

appears to state a claim for provision of false CMI under 17 U.S.C. § 1202(a), as it alleges not only that Gilat "intentionally removed [CMI]," but also that Gilat "intentionally distributed or imported for distribution information about [Plaintiff's] . . . Designs that was false, including but not limited to the name and other information identifying the copyright owner," and that Gilat may have otherwise "induced, concealed[,] or enabled infringement of [Plaintiff's] . . . Designs['] copyright by providing information that [was] false as to the creator of . . . [Plaintiff's] Designs, on certain submissions to the [DOB]." (Compl. ¶¶ 45–46.) Because the Parties have not briefed whether Plaintiff states a claim for provision or distribution of false CMI, the Court will not address it here.

### F. Defendants' Attorneys' Fees Request

Defendants argue that they are entitled to costs and reasonable attorney's fees under 17 U.S.C. § 505 based on the Complaint's "objective unreasonableness" and Plaintiff's "motivation" in commencing the Action, which was purportedly driven by Defendants' suit against Plaintiff in New York Supreme Court. (*See* Defs.' Mem. 21–22.) Given that Plaintiff's copyright infringement and DMCA claims survive Defendants' Motion, it is premature to award attorneys' fees to Defendants, as "the Court cannot find at this stage of the litigation that [P]laintiff's claims are objectively unreasonable or frivolous." *Premier Fabrics, Inc. v. Woodland Trading Inc.*, 42 F. Supp. 3d 549, 555 (S.D.N.Y. 2014) (footnote and citations omitted).

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted in part and denied in part. The Court dismisses Plaintiff's Lanham Act claim without prejudice. Plaintiff's claims under the Copyright Act and the DMCA survive the instant Motion. This ruling is without

prejudice to Defendants raising arguments related to those discussed here in subsequent stages of the proceedings.

Plaintiff may file an amended complaint with the Court within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is further advised that the amended complaint will completely replace, not supplement, the instant Complaint. The amended complaint must contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, the claim dismissed without prejudice may be dismissed *with* prejudice, and Plaintiff's case will go forward only on its surviving claims.

The Clerk of the Court is respectfully directed to terminate the pending Motion, (Dkt. No. 22).

SO ORDERED.

DATED:     March **19**, 2020
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

32